# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-989V
### Filed: July 31, 2020
### UNPUBLISHED

| | |
|---|---|
| JASON QUIRINO,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Special Master Horner<br><br>Interim Attorneys' Fees and<br>Costs Decision |

*Andrew Donald Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.
*Darryl R. Wishard*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On May 12, 2020, petitioner moved for an award of interim attorneys' fees and costs in the amount of $39,267.47 for his current counsel and $17,933.53 for his prior counsel. (ECF No. 60.) In response, respondent deferred to the special master regarding both the amount and appropriateness of an award of interim attorneys' fees and costs. (ECF No. 61.) However, respondent did note that "respondent is satisfied the statutory requirements and other legal requirements for an award of attorneys' fees and costs are met." (*Id.* at 2.) For the reasons discussed below, I award petitioner interim attorneys' fees and costs in reduced amount of $33,623.97 for current counsel and $17,408.53 for prior counsel.

### I. Procedural History

On July 21, 2017, petitioner filed this claim, under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that as a result of his July

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

28, 2014 Hepatitis B ("Hep B") and Tetanus-Diphtheria-acellular-Pertussis ("Tdap") vaccination he suffered a rheumatologic injury.  (ECF No. 1.)  Petitioner filed an amended petition on December 19, 2019, alleging that his July 28, 2014 vaccinations actually caused him to suffer an atypical form of Guillain-Barre syndrome ("GBS"), manifesting as an isolated small fiber neuropathy.  (ECF No 53.)

This case was originally assigned to Special Master Moran and subsequently reassigned to Special Master Sanders.  (ECF Nos. 4, 20.)  On February 27, 2018, respondent filed his Rule 4(c) report, recommending against compensation.  (ECF No. 27.)  On July 25, 2018, Andrew Donald Downing substituted in as the attorney on record in place of Ronald Craig Homer.  (ECF No. 38.)

Subsequently, petitioner filed an expert report from Dr. Laura S. Boylan to support his claim and, in response, respondent filed an expert report from Dr. Jeffrey M. Gelfand.  (ECF Nos. 41, 46.)  This case was then reassigned to my docket on August 29, 2019.  (ECF No. 49.)  Following a status conference held on September 23, 2020, petitioner filed an amended petition and supplemental report from Dr. Boylan.  (ECF Nos. 53, 57.)  Respondent also filed a supplemental report from Dr. Gelfand.  (ECF No. 62.)  On July 20, 2020, per petitioner's request, this case has been queued for the scheduling of an entitlement hearing.  (ECF No. 64.)

Petitioner filed the instant motion for interim attorneys' fees and costs on May 12, 2020, respondent filed his response on May 13, 2020, and petitioner did not file a reply.  (ECF Nos. 60-61.)  Accordingly, petitioner's motion for interim attorneys' fees and costs is now ripe for resolution.

## II.     An Award of Interim Attorneys' Fees and Costs is Appropriate

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  In his response, respondent indicated that the statutory requirements were met in this case.  (ECF No. 61, p. 2.)  I agree.

Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act.  *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352.  In *Avera*, the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  *Id.*  In denying an interim fee award, the *Avera* court reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal."  *Id.*  In *Shaw*, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a

good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.

Here, petitioner's request for interim attorneys' fees and costs is made after more than two years of litigation within the entitlement phase of this case and after petitioner incurred costs for providing multiple expert reports to support his claim. Additionally, this case is awaiting an entitlement hearing, and thus, the timing of the ultimate resolution of this case remains unknown. Accordingly, I find that petitioner's request for an award for interim attorneys' fees and costs is reasonable at this juncture.

### III.   Reasonableness of the Requested Award

#### a. Attorneys' Fees

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. This is a two-step process. *Id*. at 1347-48. First, a court determines an "initial estimate…by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id*. at 1348.

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (citation and quotation omitted). The decision in *McCulloch* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motions for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Office of Special Masters has subsequently updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016, 2017, 2018, 2019 and 2020 can be accessed online.[2]

In this case, petitioner is seeking $15,857.00 in interim attorneys' fees for work performed in 2018 through 2020 for work completed by Mr. Downing's firm and $15,294.70 in attorneys' fees for work performed in 2017 and 2018 for work completed

---

[2] Each of the Fee Schedules for 2015 through 2020 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017, 2018, 2019, and 2020 are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

by Mr. Homer's firm. I have reviewed the billing records submitted with petitioner's request, and in my experience, the hourly rates billed for 2017 through 2020 for attorney time, paralegal time, and law clerk time, are all reasonable and in accord with prior awards made by other special masters.

Turning next to the requested hours expended, special masters may rely on their experience within the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing. *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

First, after reviewing the billing records from Mr. Downing's firm, I find that counsel included entries that are duplicative and excessive due to attorneys and paralegals billing for reviewing the same orders. For duplicative entries, only hours billed by Mr. Downing, the lead attorney in this case, will be awarded. These duplicative billing entries result in a reduction of **$81.00** of the interim fee award for Mr. Downing.[3]

Second, upon review of the billing records submitted by petitioner's prior counsel, I find that there were duplicative and excessive billings due to attorneys, paralegals, and law clerks billing for reviewing the same orders and attending the same case meetings. Moreover, these duplicative reviews are billed at 0.10 hours, indicating that such reviews are less likely to have been substantive and less likely to have required multiple reviewers. Since Joseph Pepper was the lead attorney in this case, handling the majority work, for duplicative and excessive entries, only hours billed by Mr. Pepper are awarded. Additionally, the billing records included entries for drafting and reviewing case memos, which appears to be intra-office communication, and in some instances, duplicative and excessive where the same memo is being drafted by an attorney and then reviewed by a paralegal. Such intra-office communication billings will not be awarded. *See Soto v. Sec'y of Health & Human Servs.*, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.,* No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011). These billing entries result in a reduction of **$525.00** of the interim fee award for Mr. Homer.[4]

---

[3] There were duplicative entries billed by Danielle P. Avery on July 31, 2018, June 21, 2019, August 28, 2019, and August 29, 2019.

[4] There were many instances where attorneys and/or paralegals would bill for reviewing the same court orders and attending the same case meetings. For example, there were duplicative billings September 11, 2017, September 15, 2017, October 3, 2017, November 1, 2017, December 1, 2017, January 23,

4

### b. Interim Attorneys' Costs

Attorneys' costs must be reasonable as well. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

In this case, petitioner seeks $23,410.47 in interim attorneys' costs for his current counsel. The majority of the expenses incurred were expert costs billed by Dr. Boylan. (There were $10.47 spent in other expenses, which are reasonable and awarded in full.) Upon review of Dr. Boylan's two invoices, Dr. Boylan initially spent 3.5 hours on "record review," 19.25 hours on report preparation and research, and 1.75 hours on "client communication." (ECF No. 60-1, p. 16.) In providing a supplemental expert report, Dr. Boylan spent 3 hours on "record review," 19.25 hours on "report preparation and research," and 0.25 hours on "client communication." (*Id.* at 18-19.) In total, she billed 47 hours for two reports totaling 14 pages.

An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable. *Ceballos v. Sec'y of Health & Human Servs.*, No. 99–97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004). Additionally, such request should be supported by contemporaneous and detailed invoices. *Caves v. Sec'y of Health & Human Servs.*, 111 Fed. Cl. 774, 781-83 (2013); *Morse v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 683 (2009).

Here, Dr. Boylan has requested an hourly rate of $500 per hour. This is consistent with what has been awarded in prior cases and I find it to be a reasonable rate in this case as well. *E.g. Goff v. Sec'y of Health & Human Servs.*, No. 17-259V, 2019 WL 3409976 (Fed. Cl. Spec. Mstr. Mar. 29, 2019); *Schultz v. Sec'y of Health & Human Servs.,* No. 16-539V, 2018 WL 1835104 (Fed. Cl. Spec. Mstr. Feb. 16, 2018). However, the billing records submitted by Dr. Boylan make it difficult to determine with confidence whether the time spent was reasonable. Dr. Boylan has been previously cautioned against such ambiguous billings. *See Goff,* 2019 WL 3409976, at * 5.

Nonetheless, I do find the total amount of time Dr. Boylan spent researching and preparing her reports is likely to be excessive. For example, in *Goff*, Dr. Boylan billed 24.25 hours preparing a 14-page report in a case alleging ischemic stroke resulting from an influenza vaccine. 2019 WL 3409976. In this case she has billed nearly twice as much, a total of 47 hours, to produce a similar 14 pages of analysis, albeit in two reports. In *Schultz*, she billed 31 hours for the production of two reports for another case alleging ischemic stroke. 2018 WL 1835104. Here, she has billed significantly

---

2018, January 25, 2018, March 1, 2018, March 28, 2018, April 9, 2018, April 30, 2018, and May 3, 2018. There were intra-office communication and duplicative entries billed on September 19, 2017, October 20, 2017, March 14, 2018, April 9, 2018, July 18, 2018, July 24, 2018, and August 3, 2018.

5

more for two reports than she did in *Schultz* (47 versus 31 hours). Although this case involves a different injury, based on my review of the reports filed in this case I do not find that the level of complexity involved petitioner's own medical history or the general science involved in this case adequately explain these differences in billing. Importantly, the conditions at issue in this case – small fiber neuropathy and/or atypical GBS – should fall squarely within Dr. Boylan's experience as an attending neurologist and professor of neurology, suggesting she should already be generally familiar with the relevant literature. (Ex. 11.) Nothing in her curriculum vitae suggests that she necessarily should have had greater familiarity with the vascular medicine at issue in *Goff* or *Schultz*. I do note, however, that these comparisons are not dispositive.

I further stress that following my review of Dr. Boylan's report I discussed with the parties the fact that Dr. Boylan's initial report did not sufficiently address the capacity of the specific vaccinations at issue in this case to cause the conditions discussed in Dr. Boylan's report, prompting in part the supplemental report. (ECF No. 52.) I also note that Dr. Boylan spent nearly as much time reviewing petitioner's medical records to prepare her supplemental report, when she was already familiar with the case and the medical records, as she did preparing her initial report, when she reviewed them for the first time. Additionally, she billed exactly the same amount of time researching and preparing her supplemental report as she did her initial report despite the fact that the more focused supplemental report was less than half the length with fewer than half the number of citations.

For these reasons, I find that a 25% reduction to Dr. Boylan's time identified collectively as "research" and "report preparation" (totaling 38.5 hours) is appropriate. The lack of specificity in Dr. Boylan's billing records (the difficulty of which she has previously been warned) prevents a more precise reduction. Additionally, I reduce the three hours billed for medical record review relative to her supplemental report by half. These reductions total 11.125 hours or $5,562.50. Subtracting from $23,400.00, this results in resulting in an award of interim expert costs of **$17,837.50**.[5]

Additionally, petitioner seeks $2,638.83 in interim attorneys' costs for his prior counsel, including costs for filing the petition and seeking expert consultation from Dr. Samar Gupta. Following the Rule 5 conference, held on March 27, 2018, petitioner was ordered to file an expert report. (ECF No. 32.) It appears Mr. Homer retained Dr. Gupta to review the records in this case, but ultimately, no report was written. (ECF No. 60-2, p. 25.) According to the billing records, Dr. Gupta spent three hours reviewing the medical records and one hour reviewing medical literature, at an hourly rate of $500.

---

[5] Dr. Boylan's first invoice was for $12,250.00, representing 24.5 hours at $500 per hour. (ECF No. 60-1, p. 16.) Her second invoice was $11,250.00, representing 22.5 hours at $500 per hour. (*Id.* at 19.) This would total $23,500.00. According to counsel's billing records, however, he advanced client costs of $12,150.00 for the first report, one hundred dollars less than the invoice amount. (*Id.* at 13.) This is further confirmed by a copy of the relevant check. (*Id.* at 17.) There is no indication on Dr. Boylan's second invoice of any carry over balance. Consistent with that, petitioner requests total costs of $23,410.47 whereas Dr. Boylan's invoices would have suggested that total costs should have totaled $23,510.47. Accordingly, this award is calculated based on the lower amount actually paid by petitioner rather than the amount invoiced by Dr. Boylan.

(*Id.*)  Of note, shortly thereafter, Mr. Downing was substituted as counsel in place of Mr. Homer.  Upon review of the billing records and supportive documentation, I find the requested interim attorneys' costs billed by Mr. Homer to be all reasonable.

### IV.     Conclusion

In light of the above, petitioner's motion for an award of interim attorneys' fees and costs is hereby **GRANTED.**  Petitioner is awarded $33,623.97, representing $15,776.00 in interim attorneys' fees and $17,847.97 in interim attorneys' costs for Mr. Downing.  Additionally, petitioner is awarded $17,408.53, representing $14,769.70 in interim attorneys' fees and $2,638.83 in interim attorneys' costs for prior counsel, Mr. Homer.

**Accordingly, I award a total of $51,032.50 as follows:**

- **A lump sum of $33,623.97 in the form of a check payable to petitioner and her counsel, Andrew Donald Downing, Esq.; and**

- **A lump sum of $17,408.53 in the form of a check jointly payable to petitioner and her prior counsel, Ronald Craig Homer, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[6]

**IT IS SO ORDERED.**

s/Daniel T. Horner
Daniel T. Horner
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.